IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

David Wayne Allen,         )   Civil Action No.: 8:08-600-HFF-BHH
a/k/a David Allen,            )
                              )
             Plaintiff,    )
                              )        **REPORT AND RECOMMENDATION**
          vs.            )            **OF MAGISTRATE JUDGE**
                              )
Associate Warden Mr. Cartlidge, *et*    )
*al.*,                               )
                              )
         Defendants.    )

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' respective motions for summary judgment. [Docs. 101, 106.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## BACKGROUND

On February 17, 2005, the plaintiff was injured during an altercation with another inmate. Specifically, he was struck repeatedly by a Master lock, which was attached to a duffle bag. (Verified Compl. at 5.) The plaintiff was initially treated at the McCormick Correctional Institue ("MCI"), then transported to Self Memorial Hospital in Greenwood, South Carolina, for further treatment. (Powell Aff. ¶¶ 6-12.) The plaintiff alleges that while in the emergency room, the treating physician handled him roughly while stapling his skull and stitching his face. (Verified Compl. at 7-8.) He further alleges that, at the same time, he was mistreated by one of the defendant officers and a defendant nurse, both of whom worked for the South Carolina Department of Corrections ("SCDC"). *Id*. at 7-14. The

plaintiff's Complaint also alleges that the plaintiff was subsequently denied proper medication for pain management. *Id*. at 14-24. The facts of this case will be discussed in greater detail in the context of the Court's analysis.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations

2

averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

As an initial matter, one of the plaintiff's opposition memorandum [Doc. 140] violates this District's Local Rule that briefs shall not exceed 35 pages. Local Rule 7.05(b)(1) D.S.C. 65 pages of handwritten material is unmanageable for the Court and not to the plaintiff's benefit. To be fair, the last 20 pages, or so, appear to be a hand transcription of West key numbers and/or an actual opinion. If it was the plaintiff's attempt to submit legal authority which he believed was not otherwise accessible to the undersigned, then at least that portion of the excess briefing is justified. To the extent it was simply additional legal argument, as it would appear, it is improvident. Regardless, the Court has generally considered it all, plus the plaintiff's lengthy complaint and other response memoranda submitted in this case, which are not insignificant.

## I.    Exhaustion

The defendants first contend that the plaintiff did not exhaust his administrative remedies prior to filing this action. The Court agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust

administrative remedies before filing a §1983 action concerning his confinement. 42

U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the United States Supreme Court held that the

exhaustion requirement applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006), the United States Supreme Court held that the PLRA exhaustion requirement

requires proper exhaustion. *Id.* The Court stated that "[a]dministrative law requires proper

exhaustion of administrative remedies which means using all steps that the agency holds

out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to

exhaust all levels of administrative review is not "proper exhaustion" and will bar actions

filed by inmates under any federal law, including §1983. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an

administrative agency "an opportunity to correct its own mistakes with respect to the

programs it administers before it is haled into federal court." *Woodford,* 126 S.Ct. at 2385

(*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can

be resolved much more quickly and economically in proceedings before an agency than

in litigation in federal court." *Id.* Any consideration of administrative remedies pursued

after the commencement of the litigation would only serve to frustrate both purposes of the

PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. (See generally Holmes Aff.) The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. *Id.* If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. *Id.* A responsible official has sixty (60) days to respond to the Step 2 grievance. *Id.* The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e. Further, exhaustion must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

The record indicates that the plaintiff has only filed one Grievance in regards to the incident on February 17, 2005, at issue in this case. (Holmes Aff. ¶ 13, Ex.) The defendants have submitted evidence that the Grievance was returned to the plaintiff unprocessed, on April, 28, 2005, for his failure to state that he had attempted an informal resolution of the Grievance and for his failure to sign and date the Grievance form. *Id.* ¶ 15, Ex. The plaintiff was informed that he could refile his Grievance within 5 days. *Id.* The record indicates that he failed to do so. *Id.* The plaintiff filed no other Grievances related to any matters at issue in this case. *See id.* ¶¶ 17, 19, 21.

The plaintiff summarily rejoins that he filed two relevant Grievances. He complains, however, that they were "never answered." (Pl. Resp. at 1.) The plaintiff claims, therefore, that legally speaking, no administrative remedies were available to him. The Court agrees that under certain circumstances, a substantial delay in processing of an administrative Grievance may permit the Court to characterize the remedy as unavailable. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies); *Penny v. McBride*, 2009 WL 1346126, at *3 (D.S.C. May 13, 2009).

The plaintiff, here, however, has no evidence that he actually submitted two Grievances, as alleged. He has not produced any Grievance forms, numbers, or otherwise responded to the defendant's evidence that the only Grievance submitted was returned unprocessed and never resubmitted. His plea to the contrary cannot be enough. There must be some evidence from which a reasonable jury might find reason to agree.

The plaintiff contends that he gave them to an officer on February 28, 2005. (Pl. Resp. at 7.) He speculates, "What did He do with them?" *Id*. This cannot be the end of the plaintiff's obligations. As stated, the defendant has already submitted evidence that at least one Grievance was received but returned. The plaintiff would make no effort to address it. And, as to the alleged second Grievance, the plaintiff has not offered evidence of any efforts on his part to determine the status of it. He has not suggested that, at any time, he either followed up to ensure it had been submitted or to inquire as to its status. The allegations are dubious in light of the record. No dispute of fact can reasonably be

drawn from them.

For these reasons, the plaintiff has failed to exhaust his administrative remedies and, therefore, his claims should be dismissed.

## II.    Merits

In the alternative, the Court would recommend that the plaintiff's Section 1983 claim be dismissed for want of any issues of fact as to the substance of its merits. The plaintiff's Complaint is wildly outrageous. In truth, most of it sounds implausible. It is written in histrionic prose, more reminiscent of a horror novel than any actual account of a real event. The plaintiff claims to have been seditiously tortured by defendant officers and nurses, while Emergency Room medical staff literally giggled, danced, and clapped around him. Of course, as is almost always the case, the defendants, by contrast, have essentially no recollection whatsoever of the plaintiff or the events. The Court is left to make some judgment as to whether the evidence underlying the irreconcilably competing accounts would justify a jury's determination in the plaintiff's favor.

The plaintiff's Complaint covers allegations of mistreatment over approximately a 2-month period. The allegations can be roughly broken into the following incidents of alleged indifference or cruel and unusual punishment:

- February 17, 2005    A failure to protect him from an assault by another inmate

- February 17, 2005    Mistreatment by unknown nurse after assault

- February 17, 2005    Failure of physician to properly treat the plaintiff's condition

- February 17, 2005    Abuse by defendant officers and SCDC nurse while the plaintiff was being treated.

7

- February 17-20, 2005      Continuing indifference to the plaintiff's pain and injuries.

- February 20, 2005      Mistreatment by defendant nurse.

- February 29 - March 19, 2005      Indifference to continuing pain

(See generally Compl. at 3-21.) The Court will attempt to make a discussion of each of the many implicated issues, in turn.

### A. Failure to Protect

It is undisputed that the plaintiff was brutally assaulted by another inmate on February 17. The plaintiff contends that, at the time of the assault, there "was no security in the building" in which he was housed. (Compl. at 5.) He contends that it took approximately twenty minutes for another inmate to get the attention of an officer. *Id*.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Id.* at 835. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent

failure to protect inmates from violence.  *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

The plaintiff has neither alleged nor submitted evidence that any of the defendants named in his Complaint knew of a specific risk of harm to the plaintiff and consciously disregarded it.  He does not allege that prison personnel were aware of the risk of an assault or circumstantially should have been so aware.

The assault is a tragedy.  And, the Court would never suggest that such things are a justifiable incidence of incarceration.  But, the bad acts of the assailant inmate cannot be constitutionally imputed to any of the defendants for a failure to protect, on the facts of this case.

The plaintiff would argue that *Farmer* would make the defendants liable for the intrinsic risk, inherent in any prison environment, left unmonitored.  This is not the Court's understanding.  *See* Farmer, 511 U.S. at 837 ("[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  "To succeed on his claim of failure to protect, [the plaintiff] must show that Orr and Tuten had knowledge of a substantial or pervasive risk of serious harm and acted with deliberate indifference to Skeen's safety by failing to correct the situation."  *Skeen v. Orr*,

1996 WL 460761, at *2 (4th Cir. August 15, 1996) (citing *Farmer*).  The plaintiff has not produced any evidence or allegation that his assailant was known to be dangerous or of a particular threat to the plaintiff.  If the defendants were liable, strictly, for the inherent and generalized danger every inmate reasonably poses to others, prison officials would be without any defense.

**B.    Mistreatment by Unknown Nurse After Assault**

The plaintiff next contends that after he was assaulted he was taken to medical

where he was treated by an unidentified nurse. The plaintiff contends that, while examining him, the nurse released him two or three times "which caused him to fall backwards, slamming his head on the ceramic tiled floor." (Compl. at 6.)

The Court assumes the plaintiff means to argue that this was use of excessive force and not deliberate indifference. Regardless, the plaintiff has not demonstrated or alleged any injury. To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

Here, there is no evidence that the plaintiff suffered any sort of injury as a result of having been dropped onto the tile, if he in fact was. His injuries at most were *de minimis*. There is, of course, some "force [that] will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain." *Norman*, 25 F.3d at 1264. Where the circumstances involve either force which is "repugnant to the conscience of mankind," or the pain, described, can properly be said to constitute more than *de minimis* injury, no specific injury need be shown. *Norman*, 25 F.3d at 1264. The

Court has been presented with no evidence that such special circumstances exist. More significant and plainly intentional acts than those alleged here have been characterized as no more than *de minimis. Cf. Norman*, 25 F.3d 1259 (keys swung at an inmate's face striking his thumb was *de minimis* force); *Gavin v. Ammons*, 21 F.3d 430 (7th Cir. 1994) (guard pulling inmate's hair was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452 (6th Cir. 1992) (guard stomp on hand of inmate was *de minimis* force).

The plaintiff cannot satisfy the objective element of any excessive force (or deliberate indifference, which also requires a showing of objectively sever injury) claim as to this incident.

### C.     Deliberate Indifference at Emergency Room

The plaintiff has also alleged that the emergency room physician was deliberately indifferent in the treatment rendered upon arrival at the emergency room. Specifically, the plaintiff contends that the doctor refused to anesthesize the areas of his head where he was stapling and stitching the plaintiff's wounds. (Compl. at 8.) The plaintiff has also made allegations that the doctor was verbally sarcastic and/or unsympathetic and that he joined accompanying nurses in maliciously laughing over the plaintiff's discomfort. *Id*. at 7-9. The plaintiff has adamantly and expressly rejected that he has pled any state law claim, for malpractice or otherwise, but has insisted that he meant only a constitutional claim for deliberate indifference. [See Doc. 128 at 16.]

It is rudimentary that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received

adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id*. at 104.

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999). In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Assuming, without deciding, that the defendant doctor may be considered as having acted under color of state law, *see* 42 U.S.C. § 1983, the plaintiff's allegations, even if true, do not amount to a claim for deliberate indifference. First, the plaintiff has conceded that the defendant doctor was not indifferent. The doctor, in fact, treated him. (Compl. at 7-8.) Instead, the plaintiff would actually complain that the doctor treated him viciously and/or inadequately. But, the allegation must fail for the plaintiff's own admission.

Specifically, the plaintiff admits that the doctor explained that he could not anesthesize him because the injuries were to the head. (Compl. at 8.) The plaintiff's disagreement or unhappiness with this course of medical treatment is not sufficient to support a claim of deliberate indifference and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). The plaintiff has made no showing that such an explanation by the doctor was inaccurate. He certainly has not explained how it was grossly incompetent, even if mistaken. But even if the failure to anesthisize fell below some standard of care, mere malpractice or negligence in diagnosis or treatment does not give rise to a constitutional claim. *See Miltier v. Beorn*, 896 F.2d at 851; *Estelle*, 429 U.S. at 105-06 (1976); *Daniels v. Williams*, 474 U.S. 327 (1986) (inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation).

Second, sarcastic or even malicious comments or tone do not constitute, by themselves, any kind of indifference. *See, e.g., Vaughn v. Mecklenburg County Jail*, 2009 WL 1677242, at *2 (W.D.N.C. June 16, 2009) ("While the doctor's comments about when are [sic] the feds were coming to get the Plaintiff may have been the result of some frustration and should not have been directed at the Plaintiff, the comment does not establish deliberate indifference to Plaintiff's medical condition."). So comments delivered in a "harsh, extremely unfriendly voice," as alleged by the plaintiff, including, "I'm Stapling [sic] your skull back together" (Compl. at 4-5) and "Now I get to sew your face up" (Compl. at 9) are not of constitutional dimension.

For the foregoing reasons, the claim must fail as against defendant Kyle Scates, M.D., and the Court need not formally address the parties' dispute as to whether or not

Scates was actually the doctor who treated the plaintiff at the emergency room.[1] Even if he were, there is no evidence from which a reasonable jury could find him indifferent, deliberately or otherwise, as the law would define that term.

### D. Abuse by defendant officer and SCDC nurse while the plaintiff was being treated

The plaintiff further contends that while the defendant doctor was treating him, defendant officer Hawkins, defendant nurse Sumner, and two emergency room nurses were torturing him in various respects. The plaintiff's allegations in this respect are numerous and dramatic. The Court will attempt to address them chronologically.

The plaintiff first alleges that defendant officer Hawkins forcibly restrained him while the defendant doctor sutured his wounds. (Compl. at 8.) The plaintiff contends that defendant Hawkins painfully pressed his fist and forearm into the plaintiff's chest, cocked back his other arm as if to strike the plaintiff, and repeatedly yelled, "BE STILL! BE FUCKING STILL!!" *Id*. The plaintiff concedes that defendant Hawkins did so as a result of the plaintiff's inability, albeit justifiably so, to remain still during the procedure. *Id*. It appears that the plaintiff would allege that some version of this exchange occurred two or three times. *Id*.

Under the excessive force analysis described above, the plaintiff's claim would fail as to this portion of the incident for two reasons. First, the plaintiff has not indicated what injury he suffered as a result of defendant Hawkins' actions. If anything, it was to his

---

[1] The Court would note that the plaintiff has not, in fact, produced any admissible evidence to the point. He claims to have seen Scates name on a prison computer but he has not actually produced any documentation or other affiant's sworn statement, made on personal knowledge, that Scates was the doctor that rendered aid on February 17. Scates denies any knowledge of the plaintiff or any of the events in this case. (Scates Aff. ¶ 3.) This fact, therefore, would seem to qualify as an alternative basis for dismissal as to defendant Scates.

benefit, insofar as the doctor was able to actually provide the necessary treatment. The plaintiff's injuries, therefore, are *de minimis* at best. Any pain the plaintiff suffered was proximately caused by the doctor's independent medical decision not to anesthesize the plaintiff during the procedure, which the Court has no basis to second guess. The plaintiff has not alleged any additional injury from the actions of Hawkins.

Second, the defendant was permitted to use proportional force to restrain a recalcitrant inmate. *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008). Applying the factors recommended in *Whitley v. Albers*, 475 U.S. 312, 322 (1986),[2] it seems that the force used was reasonably commensurate with the need to restore the discipline necessary to provide the plaintiff with proper treatment. *See also Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (finding no excessive force if amount of force commensurate with need therefor).


The Complaint, however, continues in its description of increasingly atrocious and outrageous behavior by the defendant officer and nurses. After requesting something for the pain, the plaintiff indicated that he needed to go to the bathroom. (Compl. at 9.) He contends that the doctor replied, in a "hateful" tone, "PISS ON YOUR DAMN SELF!" *Id*. The plaintiff alleges that the ER nurses, Sumner, Hawkins, and the doctor then "erupted" into laughter, as they had been allegedly doing throughout the treatment. *Id*. The plaintiff actually attempted to urinate in his clothes but could not. *Id*. He then requested a bedpan, to which defendant Sumner allegedly replied, in "a loud, hateful, demoralizing, blood-thirsty voice, . . . If you have to piss that bad, I can catheterize you!" *Id*. The plaintiff declined the offer but Sumner allegedly persisted by declaring, in a "menacing" voice and while "weilding [sic] some clear rubber tubing" that "If you want to piss, You're [sic] going to have to let me

---

[2] See discussion, *infra*, at 18.

catheterize you!" *Id*. at 10.

The plaintiff was eventually offered a plastic bottle but was allegedly required to urinate in front of everyone in the room. He contends that Sumner then belittled him by pointing at his penis and saying, "Look, I wouldn't have been able to catheterize that little thing." *Id*.

The plaintiff next contends that upon asking for more water, Sumner looked at him with "a wild, contorted, crazed expression on her face and a blood thirsty look in her eyes" and screamed, "ONE MORE WORD OUT OF YOU AND I WILL SHOOT YOU FULL OF THORAZINE!" *Id*. The plaintiff claims that she then "produced a huge syringe" and added, "AND I CAN DO IT!!" while wielding the "syringe high up in the air." *Id*. at 11. The plaintiff contends that he simply reiterated his request for water, whereupon Sumner "her face twisted with rage and madness/insanity," screamed, "I TOLD YOU, YOU SON OF A BITCH!!" *Id*. Sumner allegedly lunged towards the Intravenous line ("IV"), crashing into the plaintiff's bed. *Id*. (It should be noted that the plaintiff does not allege any sort of direct injection. It seems plain that Sumner injected, if at all, the Thorazine directly into the IV line. *See id*.)

The plaintiff then contends that he began "gagging, caughing [sic], and dry-heaving as a reaction to the drug." *Id*. He claims that, in response, Hawkins pressed his forearm more deeply into the plaintiff's chest. *Id*. Hawkins allegedly accused the plaintiff of trying to spit on him and then threatened him with a raised fist as if to strike the plaintiff. *Id*. The plaintiff contends that, as a result, he was forced to "swallow his own vomit" for fear of retribution from Hawkins. *Id*. The plaintiff, as he does throughout the account, contends that Sumner, the doctor, and the ER nurses were "shrieking" with laughter and "cackling like a pack of wild hyenas" over his distress. *Id*.

Subsequently, Hawkins, again accuses the plaintiff of spitting on him. *Id*. at 12. The plaintiff alleges that Sumner then "lept onto the bed with her left knee ground" into his crotch and began "jamming a hard plastic tube into his mouth attempting to force the tube down his throat, literally ramming it into the back of his throat, choking him." *Id*. Again, the plaintiff claims that all the observers "burst out laughing." *Id*. Sumner ostensibly continued to try and jam the tube down the plaintiff's throat, while she and Hawkins repeatedly yelled, "OPEN YOUR FUCKING MOUTH!!" and other obscenities. *Id*. The plaintiff contends that Hawkins again physically struck him; that Sumner, another time, fiercely forced the tube as "a weapon" down the plaintiff's throat; and that, all the while, he was swallowing vomit and the defendants were shrieking with laughter. (Compl. at 13.) The doctor then continued treating the plaintiff. *Id*. at 13-14. The defendants allegedly "were whooping and cackling" each time he "yelped out in pain. . . ." *Id*. at 14.

Of course, Hawkins and Sumner have no recollection whatsoever of even accompanying the plaintiff to the hospital much less any of the events alleged.[3] (See Hawkins Aff., Sumner Aff ¶ 5, 6.) They contend that under no circumstances would SCDC medical personnel even accompany an inmate to the hospital. (Sumner Aff. ¶¶ 13, 14.)

---

[3] This case is prototypical of everything that is impossible for the Courts concerning litigation brought by members of our incarcerated population. Someone is being flatly dishonest with the Court. The situation arises far too often. Prisoners and correctional system defendants do not argue, typically, over shades of variations of the events at issue. These complaints do not involve dissimilar views which might, nonetheless, be reasonably of the same event. Rather, one side swears that they were maced in the eyes until they bled, while the other side claims that no evidence of any kind of injury was noted; one side says a grievance was absolutely filed the other side adamantly declares it never was. The Court is confident that both sides of this eternal dispute have been flatly untruthful on various occasions. It is not one side or the other. And, yet the undersigned, and on occasion a jury of this community's citizens, is required to sort out a dispute that would not merit consideration but for what is surely, in certain instances, the bald faced lie of one party or the other. It is the undersigned's honor and privilege to consider and resolve all manner of cases before her, including those serious matters brought by members of the prison population. Lies, however, are unacceptable in our system of justice. The undersigned, therefore, would not hesitate to recommend that the district court, in the event any portion of this case is tried to its conclusion, give serious consideration to sanctioning the failing party, plaintiff or defendants, for any perjurious account, which has put the time and resources of our court system to such unjustified length.

The plaintiff's account on its face strains credulity. But, the Fourth Circuit has reminded that a prisoner's account of events is probative even when it recounts events which are hard to believe. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir.1991). Just like in any other case, a jury, in fact, may find the inmate more credible than the officers. And, to the extent the plaintiff is telling the truth in all material respects, the Court would agree that such acts would be beyond the bounds of human decency and likely constitutionally effective to support a claim of cruel and unusual punishment.

To that end, the Court would recommend that the plaintiff has adduced sufficient evidence from which a jury could find that he satisfied both the subjective and objective components of an excessive force claim. To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all

18

allegations of excessive force").

There are numerous allegations regarding this particular altercation at the ER. Most of them would likely not independently qualify as actionable. For instance, and as discussed, the taunting and language allegedly used, while deplorable if true, would not be violative, in and of itself. Moreover, the Thorazine element is probably not effectively established by the record as to its relevance to an excessive force claim.

Thorazine appears to be an antipsychotic, *see* http://mental-health.emedtv.com/thorazine/thorazine.html, but the plaintiff has not put forward any evidence to that end. So the appropriateness of its usage is not readily apparent. Moreover, the plaintiff contends that he adversely reacted to it, but there is no actual reason for a jury to believe that Thorazine was not medically appropriate at that time, as to need or administration. He has not submitted any evidence which would suggest that it was grossly incompetent to so administer the drug under the circumstances, even if the plaintiff ultimately experienced negative side effects. Sumner's alleged aggressiveness would not seem to alter that view. As far as the Court can tell, she did not actually assault the plaintiff with Thorazine but rather administered it through the IV. (Compl. at 11.) The Court, therefore, would conclude that these elements, like the language and taunts, therefore, do not justify, independently, submission of any claim to the jury.

That does not mean they are irrelevant. The Court believes that all these facts might reasonably and commulatively be interpreted as accoutrements of wantonness. Coupled with the allegations related to the forcible insertion of the plastic tube, the Court believes that the plaintiff has created issues of fact as to the subjective element of his claim. Specifically, if the plaintiff's version of the facts are believed, then a reasonable jury

would be justified in concluding that there was no reason for the defendants to violently force a plastic tube down his throat to the point of gagging and vomiting; that the force was, thus, disproportionate to any perceived threat; and, therefore, was applied sadistically and maliciously and not in a "good-faith effort to maintain . . . discipline" and security, *Iko*, 535 F.3d at 238. As stated, the plaintiff claims that all of the defendants present apparently delighted in the plaintiff's pain and agony. The Court does not believe it, but a jury might, once live testimony is pitted and considered. And, actions "totally without penological justification" can constitute "unnecessary and wanton inflictions of pain." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quotations omitted). Accordingly, issues of fact exist as to the subjective element.

As to the objective component, the plaintiff has not precisely articulated any enduring or significant injury as a result of the alleged actions, such that they could be considered more than *de minimis*. But, some "force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain." *Norman*, 25 F.3d at 1264. Where the circumstances involve either force which is "repugnant to the conscience of mankind," or the pain, described, can properly be said to constitute more than *de minimis* injury, no specific injury need be shown. *Norman*, 25 F.3d at 1264. The Court believes that a seditious, spirited, and unjustified physical assault on the plaintiff, whereby a plastic tube is inserted to the point of vomiting, constitutes an act "repugnant to the conscience of mankind," regardless of the extent of damage inflicted.

The defendant officer and nurse would not enjoy qualified immunity for such actions, as alleged. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At all times relevant to this case, the defendants would have been fully aware that the plaintiff's right to be free from force employed "maliciously and sadistically for the very purpose of causing harm"

was clearly established and that they could not physically assault the plaintiff without cause.  *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Thus, if the district court declines to adopt the undersigned's recommendation regarding exhaustion, the Court would not be able to recommend dismissal of the Section 1983 claim, to the extent it is based upon the alleged and unprovoked assault by defendants Sumner and Hawkins.  The claim would not survive as to the nurses or the doctor who had no supervisory role or alleged physical participation therewith.

### E.    Mistreatment by defendant nurses

The plaintiff contends that upon his return to the prison, he was dumped back into his cell where he lay for three days, drifting in and out of consciousness, dry-heaving, gagging, and urinating on himself.[4]  (Compl. at 17.)  The plaintiff contends that on February 20, a Sergeant Gibson expressed concern for the plaintiff and took him to medical for examination.  *Id*. at 17-18.  The plaintiff complains that an unidentified nurse scrubbed his wounds vigorously, in an attempt to clean the blood.  *Id*. at 18.  The plaintiff asked her to stop scrubbing so hard, to which the nurse allegedly said, "If you want me to clean you, you are going to have to remain in this chair!"  *Id*. at 19.   The plaintiff contends that he was offered some Motrin for the pain, to which he admits to calling them "crazy" and questioning their medical credentials.  *Id*.   There is more to the account but it need not be all recited here.

To the Court, the entire incident, as the plaintiff alleges, sounds permissive.  The plaintiff was not commanded to be cleaned.  Rather, the nurse indicated that if he desired

---

[4]  The plaintiff actually describes a number of events between the time he left the hospital and was returned to his cell.  As far as the Court can determine, non of them are of any constitutional import.

to be so cleaned, he would need to sit still while she attempted to do so. *See id.* Second, as far as the Court can determine, he suffered no injury as a result and the Court does not believe a jury could find that the pain inflicted would somehow "shock the conscience." Lastly, in light of all that the plaintiff has alleged in this remarkable Complaint, the undersigned finds it somewhat insulting and damaging to the overall credibility and force of his accusations that he would also complain about a nurse's legitimate attempts to tend to him, even to the extent it caused him some discomfort and pain. No matter, he has not offered evidence of any actionable wrongdoing by the nurse defendants.

F.      **Continuing indifference to the plaintiff's pain and injuries**

The plaintiff also contends that he went a significant period of time without effective pain medication. (Compl. at 19-23.) He contends that he was prescribed it by defendant Dr. Lovice on multiple occassions but that the SCDC would not actually give the plaintiff any medicine, other than Motrin. (Compl. at 19, 21.) The plaintiff has alleged that he went until March 12, 2005 and after reconstructive surgery, before receiving an injection of Toradol, which he contends was not his prescription nor was it effective to relieve his pain. (Compl. at 21.) The plaintiff has not actually produced any evidence in support of his contentions about the medication he was allegedly prescribed.

In contrast, the defendants have submitted evidence that the medical records indicate that he was prescribed only 800 mg of ibuprofen, to be taken three times per day, by a Dr. Mcree. (Sumner Aff. ¶ 46.)

The Court finds these allegations to be of a fairly serious kind. It is not disputed that the plaintiff suffered a severe attack and concomitant injuries. In fact, the injuries were so significant that they required constructive surgery, which occurred on or about March 11, 2005. To the extent he was actually without substantial pain medication for essentially three

weeks would seem to create reasonable inferences regarding deliberate indifference. But the record is not developed in his favor. The record before the Court suggests a mild prescription, *id*., and that the plaintiff was, in fact, given Motrin, by his own admission.

It is a close call, but there is no evidence that any of the defendants failed to follow the prescribing instructions of any physician.

## III. Miscellaneous

The plaintiff has made some stray accusations about his continued incarceration in the Special Management Unit (SMU), even after the assault and injury. As the defendants argue, however, that claim cannot survive because "[a]n inmate has no liberty interest in remaining in the general prison population because administrative segregation is `the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (quoting *Hewitt v. Helms*, 459 U.S. 460 (1983)).

Summary judgment is also requested for the plaintiff's alleged failure to serve various defendants. The plaintiff complains about reasons why he has been impeded in that process. [Doc. 140 at 3.] The undersigned does not believe the matter needs any resolution. As to any of the yet unserved defendants, all claims would still be dismissed without prejudice, for the plaintiff's failure to exhaust, which would be the same outcome were they dismissed for failure of service. Alternatively, all implicated claims should be dismissed with prejudice because no evidence exists as to any constitutional violations, whether committed by served or unserved defendants. The only exception is the alleged conduct of defendants Sumner and Hawkins, which would warrant denial of summary judgment as to the one incident, insofar as the district court rejects the exhaustion recommendation.

## IV.    State Law Claims

As discussed, the plaintiff has expressly and emphatically disavowed whatever state law claims he might have for the same alleged conduct. [Doc. 128 at 16.] To the extent any were still intended, however, the undersigned would recommend that the district court decline to exercise supplemental jurisdiction over whatever state law claims the plaintiff may have against the defendants, having already recommended dismissal of the plaintiff's federal claims.   *See* 28 U.S.C. § 1367(c); *Tripp v. Charlie Falk's Auto Wholesale Inc.,* 290 Fed. Appx. 622, 632 (4th Cir. 2008); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.")  Thus, the state law claims, if any, are dismissed *without prejudice* for refiling in state court.

## <u>CONCLUSION</u>

Wherefore, based upon the foregoing, it is recommended that the defendants' motions for summary judgment [Doc. 101, 106] should be GRANTED and all claims dismissed *without prejudice* for a failure to exhaust administrative remedies. To the extent the district court finds that issues of fact exist as to exhaustion, the undersigned would alternatively recommend that summary judgment be GRANTED, in part, with prejudice, as to all claims except those against defendants Hawkins and Sumner for their alleged treatment of the plaintiff in the hospital, as described herein. As to those claims, the motion should be DENIED.

s/Bruce Howe Hendricks
United States Magistrate Judge

February 11, 2010
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).